**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   18-cr-00381-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. BRUCE HOLDER,

    Defendant.

---

**GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE
PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

---

The United States of America, by and through Assistant United States Attorney Jeremy Chaffin, files this notice in response to the defendant's Request for Pretrial Notice of 404(b) Evidence.  ECF # 35.  The government intends to introduce the evidence set forth below pursuant to Federal Rule of Evidence 404(b).

## BACKGROUND

The defendant was charged by Indictment on August 16, 2018, with one count of distribution of fentanyl resulting in the death of J.E., and one count of distribution of fentanyl resulting in serious bodily injury to Z.G.  ECF # 1.  A warrant was issued for the defendant's arrest that same day.

On August 21, 2018, the defendant was arrested and brought before the Court. ECF # 5.  On August 30, 2018, the defendant was arraigned and entered a not guilty

plea. ECF # 33. The Court initially set trial for January 7, 2019. On December 3, 2018, the defendant filed multiple motions related to this case. ECF ## 35, 36, 37. On December 4, the Court, on its own motion, vacated the trial date and reset trial for March 4, 2019, in light of the motions filed in this case. ECF ## 39, 41.

## EVIDENCE THE GOVERNMENT INTENDS TO INTRODUCE

The government intends to introduce the following evidence at trial pursuant to Federal Rule of Evidence 404(b).

A. Other Distribution of Fentanyl Pills by the Defendant

W-1[1] will testify that he was directly involved in the distribution of pills containing fentanyl that resulted in the death of J.E., one of the counts at issue in this case. W-1 will also testify that these pills were obtained directly from W-2. W-1 also observed on a number of occasions W-2 obtain similar pills directly from the defendant. W-1 has explained that W-2 lived next door to the defendant, and specifically recalled the defendant providing W-2 with pills to sell to W-1 on an early summer evening in 2017. When this occurred, W-1 was with W-2 in the defendant's apartment. W-1 also frequently observed W-2 go to the defendant's apartment to get pills when W-2 was out of pills. W-1 recalled W-2 receiving pills from the defendant on at least 10 separate occasions, and each time it was between 20 and 50 pills.

---

[1] There is a protective order in this case protecting the identities of cooperating witnesses. In light of this order, the government has referred to witnesses by the designation "W" and a number, e.g. W-1, W-2, etc. The government will provide the defense with the identities of the witnesses identified in this document through separate correspondence.

W-2 will testify that he was directly involved in the distribution of pills containing fentanyl that resulted in the death of J.E. and serious bodily injury to Z.G., the counts at issue in this case. W-2 will also testify that these pills were obtained directly from the defendant. W-2 explained that he would sell the pills to others for $20 or $25 per pill and would return $17 per pill to the defendant. W-2 was present on multiple occasions when the defendant would distribute fentanyl pills. W-2 described how the defendant would keep some pills—which W-2 described as the pills the defendant would deal from—in a coffee table in the defendant's living room. W-2 also described how the defendant would hide large quantities of pills in other areas of the defendant's home. W-2 also described how the defendant would have W-2 distribute pills on the defendant's behalf when the defendant was out of town. W-2 explained that he was given a key to the defendant's residence in order to facilitate these distributions. W-2 also identified two customers of the defendant, Michael Bowen and Tanner Crosby, that W-2 observed the defendant distribute fentanyl pills to.

W-3 purchased fentanyl pills directly from the defendant on a number of occasions between December 2017 and April 2018. W-3 would purchase as many as 75 fentanyl pills at a time from the defendant to sell to others. W-3 described the defendant distributing the pills from a pill bottle he kept in a coffee table in his home. The pills described by W-3 match the description of the pills involved in the charges at issue in this case.

W-4 became involved in the distribution of fentanyl pills through the defendant.

W-4 had requested money from the defendant for personal items and was told by the defendant to earn money by distributing fentanyl pills.   W-4 would obtain pills from the defendant and distribute them to others.   Additionally, W-4 would distribute pills to customers of the defendant, when the defendant was out of town.   W-4 explained that customers would occasionally come to the defendant's home and collect the pills from the defendant's coffee table, and W-4 would then collect the money from them. Communications between W-4 and the defendant, obtained from the defendant's phone, indicate that the defendant was distributing pills to W-4.   The pills described by W-4 match the description of the pills involved in the charges at issue in this case.

W-5 denied involvement in the distribution of fentanyl pills (despite evidence to the contrary), but explained that she had been provided fentanyl pills by the defendant as a sample.   Communications between W-5 and the defendant, obtained from the defendant's phone, indicate that the defendant was distributing pills to W-5.   The pills described by W-5 match the description of the pills involved in the charges at issue in this case.

W-6 obtained fentanyl pills directly from the defendant on a number of occasions, primarily for her boyfriend.   W-6 would purchase the pills from the defendant for $30 per pill.   W-6 would also occasionally purchase pills from W-5, paying $20 to $25 per pill.   The pills described by W-6 match the description of the pills involved in the charges at issue in this case.

W-7 obtained fentanyl pills directly from the defendant on a number of occasions,

primarily for personal use.   Initially, W-7 purchased pills from Tanner Crosby.   Mr. Crosby introduced W-7 to W-5, and W-7 began purchasing pills directly from W-5 for $20 to $25 per pill.   Eventually W-7 was introduced to the defendant and would purchase pills directly from him for $20 to $30 per pill.   The pills described by W-7 match the description of the pills involved in the charges at issue in this case.

W-8 obtained fentanyl pills directly from the defendant on a number of occasions. W-8 purchased the pills from the defendant for $20 per pill.   Communications between W-8 and the defendant, obtained from the defendant's phone, indicate that the defendant was distributing pills to W-8.   The pills described by W-8 match the description of the pills involved in the charges at issue in this case.

W-9 obtained fentanyl pills directly from the defendant on a number of occasions, for further distribution.   W-9 would purchase the pills from the defendant for $20 per pill and sell them to others for $35 per pill.   The pills described by W-9 match the description of the pills involved in the charges at issue in this case.

W-10 obtained fentanyl pills directly from the defendant and W-2 on multiple occasions.   W-10 purchased the pills for $20 per pill.   Communications between W-10 and the defendant, obtained from the defendant's phone, indicate that the defendant was distributing pills to W-10.   On some occasions the defendant provided pills to the defendant in a baggie with penguin logos.   Communications between W-10 and W-2, obtained from W-2's phone, indicated that W-2 was also supplying W-10 with fentanyl pills.   The pills described by W-10 match the description of the pills involved in the

charges at issue in this case.

W-11 obtained fentanyl pills directly from the defendant on a couple occasions, primarily for personal use. W-11 also obtained fentanyl pills directly from W-5. W-11 would purchase the pills for $30 per pill, but could purchase them for less per pill if she purchased a larger quantity. The pills described by W-11 match the description of the pills involved in the charges at issue in this case.

W-12 obtained fentanyl pills directly from the defendant on several occasions, primarily for personal use, over the course of a year and a half. W-12 purchased the pills from the defendant for $30 per pill. W-12 stated that the most pills she had seen the defendant with at a single time was approximately 200 pills. W-12 had a debt of approximately $2000 with the defendant for the pills obtained from him. The pills described by W-12 match the description of the pills involved in the charges at issue in this case.

W-13 obtained fentanyl pills directly from the defendant on several occasions, primarily for personal use. W-13 would pay $20 or $25 per pill depending on the amount purchased. W-13 explained that if he purchased more than 10 pills from the defendant, he would be able to get them for $20 per pill, otherwise they were $25 per pill. W-13 also explained that on a number of occasions multiple people would pool their funds to purchases pills. Everyone would pay in $25 per pill, and W-13 would buy pills from the defendant for $20 per pill, with the balance going to him in the form of more pills. W-13 had a debt of approximately $2,200 with the defendant for the pills

obtained from him.   W-13 had a conversation with the defendant regarding what the pills were, the defendant told W-13 the pills were pressed and contained fentanyl.   The pills described by W-13 match the description of the pills involved in the charges at issue in this case.

  B. Importation of Fentanyl Pills by the Defendant

W-2 understood from the defendant, that the defendant travelled to Mexico approximately once a month in order to obtain fentanyl pills.   In February 2018, W-2 travelled to Mexico with the defendant in order to procure more fentanyl pills.   W-2 described crossing the border into Mexico in the defendant's truck and meeting with the defendant's source of supply, observing the defendant provide the source with a large sum of money.   The next day, W-2 stated that the source took the defendant's truck and returned it later with the pills hidden inside.   W-2 returned with the defendant to Grand Junction, where the defendant later removed the pills from the truck, showing them to W-2.   W-2 described thousands of pills contained within a vacuum sealed bag.   W-2 explained that these pills were identical to pills involved in the charges in this case.

Agents reviewed records of the defendant's border crossing.   Consistent with W-2's description, the records indicated that the defendant entered the United States from Mexico on approximately a monthly basis.   On June 13, 2018, agents learned that the defendant entered the United States from Mexico, and observed him returning to his home.   Shortly thereafter, agents conducted a "trash pull" at the defendant's residence.   The trash from the defendant's residence included a vacuum sealed package containing

residue later tested and confirmed to be fentanyl. In the residue were multiple imprints of what appeared to be pills, consistent with W-2's description of the packaging used by the defendant.

### C. Controlled Purchases

On a number of occasions, agents conducted controlled purchases of fentanyl pills from W-14. The pills obtained in these purchases were similar in appearance to the pills underlying the charges in this case. W-14 obtained these pills directly from W-5, and understood from W-5 and Michael Bowen—an associate of W-14—that the source of these pills was the defendant. Immediately prior to most of the controlled purchases, the defendant was observed by agents arriving at W-5's residence and quickly departing. Additionally, communications obtained from the defendant's phone indicate that the defendant supplied W-5 with fentanyl pills.

### D. The Defendant's Involvement in the Death of Another

As noted above, W-2 specifically indicated that the defendant distributed fentanyl pills to a person named Tanner Crosby (also known as Tanner Hollet). On May 19, 2018, Mr. Crosby died from a mixed drug overdose involving fentanyl. When law enforcement arrived on the scene of Mr. Crosby's death they located several fentanyl pills similar in appearance to the pills involved in the charges in this case. Some of these pills were contained in a distinctive baggie with penguin logos on it. During the search of the defendant's home, agents located these same distinctive baggies in the defendant's bedroom. W-2 and W-4 both confronted the defendant regarding their

belief that the defendant distributed pills that caused Mr. Crosby's death.

E. The Defendant's Attempts to Destroy Evidence

During his arrest, agents seized a cellular phone from the defendant's possession. Contemporaneous with the defendant's arrest, agents executed a search warrant at his home, seizing, as pertinent here, an iPad. These items contained substantial evidence related to the defendant's involvement in the distribution of fentanyl pills. Shortly after the defendant's arrest, the defendant spoke with his wife on a recorded jail call. During this call, the defendant and his wife discussed remotely wiping the devices discussed above to prevent the government from accessing the information contained on the devices. The defendant's wife stated that she reported the devices stolen and attempted to remotely wipe the devices. During the defendant's detention hearing, the defendant admitted that he sought to attempt to wipe the devices, but claimed that he did so to prevent the government from seeing private images on the devices.

**ARGUMENT**

Rule 404(b) precludes using crimes, wrongs, or other acts to prove that commission of the charged crime conforms to the defendant's character. Fed. R. Evid. 404(b)(1). But other acts evidence may be admitted for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "This rule is one of inclusion, rather than exclusion, unless the evidence is introduced for the impermissible purpose

or is unduly prejudicial." *United States v. Smalls*, 752 F.3d 1227, 1237 (10th Cir. 2014) (quotation omitted).

Courts consider a four-part test when evaluating the admissibility of 404(b) evidence:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to [Rule] 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*Id.* (quotation omitted).

The evidence related to other distributions of fentanyl pills by the defendant, the defendant's importation of fentanyl pills from Mexico, the controlled purchases, and the defendant's involvement in the death of another is critical to establish identity, knowledge, motive, and intent. It is anticipated that the defendant will contest that he distributed the drugs that resulted in the death of J.E. and serious bodily injury to Z.G. The proffered evidence tends to show that the defendant's distribution of these pills was part of a larger scheme to distribute fentanyl pills for profit. *United States v. Brooks*, 161 F.3d 1240, 1243 (10th Cir. 1998) ("other acts evidence is properly admitted at trial to establish identity"). The evidence also demonstrates the defendant's knowledge regarding the pills and his intent in distributing them. *United States v. Poole*, 929 F.2d 1476, 1481 (10th Cir. 1991) (other acts of drug distribution offered for a proper purpose of showing the defendant knew of the drug distributed and that he had the intent to

distribute it). Additionally, the evidence serves the proper purpose of corroborating W-2's testimony. *See United States v. Porter*, 881 F.2d 878, 886 (10th Cir. 1989) (noting corroboration is a proper purpose under F.R.E. 404(b)).

The evidence is likewise relevant. The evidence establishes that the defendant is the primary, if not sole, source of fentanyl pills in the Grand Junction area. Accordingly, the evidence makes it more probable that the defendant in fact distributed the pills that killed J.E. and caused serious bodily injury to Z.G., as W-2 will testify. F.R.E. 401 (evidence is relevant if it has a tendency to make a fact of consequence more or less probable).

Furthermore, the probative value of the evidence is not substantially outweighed by the dangers articulated in Federal Rule of Evidence 403. Indeed, the evidence directly relates to the anticipated central issue in this case, whether the defendant was the person that distributed fentanyl pills that killed one person and injured another. Consequently, the evidence is admissible as 404(b) evidence. To the extent the defendant wishes a limiting instruction, one can be prepared that ensures the jury uses the evidence only for the purposes for which it is admitted.

The defendant's attempts to destroy evidence demonstrate his consciousness of guilt. *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir 1980) ("An attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt and admissible on that basis."). Accordingly, the evidence described above is admissible at trial against the defendant.

## **OTHER ISSUES**

The defendant requests that the government be required to detail the dates and places that the proffered 404(b) evidence occurred.   While the government is not required to provide such information, it has included that information to the extent practicable.   *United States v. Folse*, 163 F.Supp.3d 898, 916 (D. N.M. 20215) ("The United States need not provide the dates, times, places and persons involved in [404(b) acts]; the statements of each participant, or any documents that contain evidence of such other crimes or acts." (quotation omitted)).   Additionally, the defendant requests that the government be required to provide the names and addresses of all persons who were witnesses to or have knowledge of any proffered 404(b) evidence.   As noted above, the government has provided the defense with the names of witnesses discussed in this filing.   However, the government objects to the defendant's request for information beyond what has already been provided.   *Id.*

Respectfully submitted this 28th day of December, 2018.

          JASON R. DUNN
          United States Attorney


          By: *s/ Jeremy Chaffin*
          JEREMY CHAFFIN
          Assistant United States Attorney
          United States Attorney's Office
          205 North 4th Street, Suite 400
          Grand Junction, CO 81501
          Tel: (970) 257-7113
          Fax: (970) 248-3630
          E-mail: jeremy.chaffin@usdoj.gov
          Attorney for Government

## CERTIFICATE OF SERVICE

  I hereby certify that on this 28th day of December, 2018, I electronically filed the foregoing **GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Marna M. Lake
marnalake@gmail.com

                s/ Cosandra Foster
                COSANDRA FOSTER
                Paralegal Specialist
                U.S. Attorney's Office
                205 N. 4th Street, Suite 400
                Grand Junction, CO 81501
                Telephone (970) 241-3843
                Fax (970) 248-3630
                E-mail: cosandra.foster@usdoj.gov