IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

United States Magistrate Judge Gordon P. Gallagher

Criminal Case No.:   18-cr-381-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRUCE HOLDER,

    Defendant.

---

RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS

---

    This matter comes before the Court on Defendant Bruce Holder's motion to suppress (ECF #37),[1] Defendant's supplement thereto (ECF #40), the Government's response (ECF #48), Defendant's 2nd supplemental motion (ECF #205), the Government's response (ECF #246), the Defendant's memorandum and argument (ECF #282), and the

---

[1] "(ECF #37)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

Government's argument (ECF #290). A motion hearing was held 10/31/2019[2] and the transcript of that hearing is lodged at ECF #278. Based on the unanimous consent of the parties (ECF #14) the matter was referred to my jurisdiction by the then Chief Judge (ECF #15). The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises.[3] The Court specifically references the property search warrant and affidavit (ECF #205-1) and cell phone search warrant and affidavit (ECF #205-2) throughout this recommendation.

Defendant moves to suppress the search of his residence on the basis that: (1) the information contained in the application for the search warrant was stale and thus not supported by probable cause; (2) the search exceeded the scope of the warrant; and (3) the warrant was executed in a reckless manner. (4) Defendant moves to suppress the search of his cell phone on the basis that the search was unreasonably delayed. Finally, (5) Defendant moves to suppress the search of an iPad on the basis that it was based on an invalid "any and all warrant."

Staleness

"No Warrants shall issue, but upon probable cause, supported by Oath or affirmation." United States Constitution Amendment IV. The Supreme Court described the probable cause inquiry as a "commonsense, practical question" to be informed by the totality of the circumstances present in any particular case. *Illinois v. Gates,* 103 S.Ct.

---

[2] The parties specifically requested to file written arguments after the production of the transcript and the last argument was lodged on 12/4/2019—which is when this matter became ripe for resolution (ECF #290).

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any specific written objections with the District Judge to whom this case is assigned. Fed. R. Crim. P. 59(b)(2).

2

2317, 2328 (1983). "Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched. *U.S. v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004). "Whether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *United States v. Snow,* 919 F.2d 1458, 1460 (10th Cir.1990). Ongoing and continuous activity makes the passage of time less critical when judging the staleness of information upon which a search warrant is based. *See Id.*

Defendant Bruce Holder's residence was searched on August 21, 2018 with authority granted by a warrant issued four days prior on August 17, 2018 (ECF #205-1). The affidavit in support of the warrant details an investigation which began in early 2018 after an overdose death in late 2017. (ECF #205, p 10). Law enforcement contacted an individual named Z.G., who survived death by overdose due to the administration of NARCAN (ECF #205-1, p. 11). Z.G. identified the potential cause of his overdose, little blue pills marked with an "M," and began the trail of information which ultimately led to Defendant Bruce Holder. *Id.*

In terms of timing, Z.G. revealed that he had seen, on a summer evening in 2017, Defendant Bruce Holder provide Chris Huggett—Defendant Bruce Holder's nephew—with the pills. *Id*. Huggett was the source of supply for Z.G. Z.G. disclosed that he observed Huggett go to Defendant Bruce Holder's residence for resupply of the pills and that Huggett had received pills from Defendant Bruce Holder on at least 10 occasions when Huggett needed more pills to distribute. *Id*. Huggett was arrested in July 2018 and his phone was searched in early August (ECF #205-1, p. 13). The search of Huggett's

phone revealed a December 2017 conversation between Huggett and an individual named Colby—the topic of the conversation being the longing to purchase drugs. *Id.* At the time of the conversation, Huggett was apparently temporarily out of the wanted pills and awaiting the return of Bruce (ECF #205-1, p. 14).

Law enforcement conducted a controlled purchase of the pills on July 3, 2018. The events surrounding that purchase, as detailed in the affidavit, indicate that Defendant Bruce Holder supplied the pills to his daughter Lexus Holder, who then supplied them to Jonathan Kees, who then sold them to the CS. *See* affidavit (ECF #205-1, pp. 15-18). Another individual identified Defendant Bruce Holder as selling the pills from his home (the target residence) from December 2017 through April 2018 on 8-10 different occasions (ECF #205-1. P. 18)—on one occasion retrieving them from a pill bottle in a coffee table in the home. The source, who apparently had a falling out with the group when she refused to go to Mexico to body-carry pills back to the United States, also discussed being present when another individual, Crystal Brickey, was having a discussion with Defendant Bruce Holder about Brickey purchasing guns for Bruce Holder (ECF #205-1, p. 19). Defendant Bruce Holder is a felon and cannot legally possess a firearm. ATF records indicate that Brickey purchased the handguns from a pawnshop in Grand Junction, lending credibility to the source's information. *Id*.

Law enforcement was able to verify the veracity of some statements made by the source, particularly as to Defendant Holder's multiple border crossings (ECF #205-1, p. 20). Holder crossed the border back from Mexico in June 2018, returning to the target residence. *Id*. A trash pull was conducted on June 19, 2019—revealing what appeared to

be packaging for the blue pills at issue (ECF #205-1, pp. 21-22). The blue pill residue on the packaging from the trash pull tested as fentanyl (ECF #205-1, p. 23).

Law enforcement interviewed Chris Huggett on July 18, 2018 (ECF #205-1, p. 25). Huggett described Defendant Bruce Holder's continuing involvement in distribution of the blue fentanyl pills, the purchase of those pills in Mexico, the transport of the pills to the United States, the storage of the pills in the target residence, and the fact that pills were present in the target residence as recently as approximately July 4, 2018 (ECF #205-1, pp. 25-27). Huggett also discussed the death of Tanner in May 2018—and that Tanner was a downstream customer of Holder's pills through Michael Bowen (ECF #205-1, p. 27).

Here, Defendant Holder is suspected of continuous and ongoing drug activity—purchase, possession, transport, and distribution. Rather than being stale, the evidence in this case indicates that Defendant was continually involved in each of these activities. The case law firmly establishes that staleness is dependent "on the nature of the criminal activity [and] the length of the activity . . ." *Mathis*, 357 F.3d at 1207. Defendant's assertion that the facts in the affidavit are too old to constitute probable cause is, at best, based on the erroneous view that any supposed time period between July 2018 and August 2018 operated as some sort of cessation of activities. The continuous and ongoing nature of the alleged crimes here completely belies that assertion.

While Holder may not have come to the attention of law enforcement until late 2017/early 2018 upon the overdose of an individual, the investigation then goes back to document his continual and lengthy involvement. Holder involved himself, his family, and his residence over a twelve-month period. Holder's involvement is documented by

5

multiple sources including observation, government records, a trash pull, electronic records, and witness interviews. In light of the nature of the activity, the length of the activity, and the items sought, the Court finds that the information upon which the warrant affidavit is based is not unconstitutionally stale.

Scope (not pertaining to the phone)

Defendant argues that the search exceeded the scope of the warrant because the warrant did not "provide for the seizure of any vehicles" (ECF #37, p. 6), because two vehicle titles were seized, because $5000 cash was seized, and because the house was "trashed." *Id*.

"[T]he general rule in determining whether there has been a violation for an overly expansive scope of a search is that only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant." *United States v. Hargus,* 128 F.3d 1358, 1363 (10th Cir.1997) (internal citation and quotation marks removed), *cert. denied,* 118 S.Ct. 1526 (1998). Generally, a search is not invalidated just because some items are seized that are not specified in the warrant. *U.S. v. Le*, 173 F.3d 1258, 1269 (10th Cir. 1999). A warrant meets the Fourth Amendment's particularity requirement "when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Harris,* 903 F.2d 770, 775 (10th Cir.1990). The 10th Circuit has sustained warrants phrased in "[b]road and generic terms of description" in certain cases, for instance in searches for drugs and related paraphernalia, because the nature and characteristics of some criminal operations do not easily lend themselves to specific descriptions of things to be seized.

*U.S. v. Richardson,* 86 F.3d 1135, 1544 (10th Cir. 1996) (abrogated on other grounds *U.S. v. Aranda-Diaz,* 623 Fed. Appx. 912 (10th Cir. 2015)). This is because even warrants phrased in generic terms can, under some circumstances, still "allow the executing officers to distinguish between items that may and may not be seized." *United States v. Finnigin,* 113 F.3d 1182, 1187 (10th Cir.1997).

Here, the description of the items to be seized can be found at ECF #205-1, pp. 40-42. Defendant's dispute over the seizure of the $5000 cash is directly addressed by subsection 10 (ECF #205-1, p. 40) which authorizes seizure of United States currency representing drug proceeds. With regard to vehicles, Defendant asserts that agents took the keys to a white vehicle and drove it around the neighborhood and took the keys to a motorcycle and drove it—with a co-Defendant later noticing a chip in the paint (ECF #37, p. 6). The Government acknowledges driving Defendant's vehicle to his home after he was arrested several blocks away and also test driving the motorcycle—believed to be purchased with drug proceeds—in an attempt to determine if the motorcycle would be suitable for forfeiture (ECF #48, p. 7). Nobody alleges that anything of evidentiary value was seized from either the car or the motorcycle.

This is a non-issue. As to the vehicle, it is ultimately unclear to as to whether it was a vehicle at the residence which was driven (in which case a search was authorized by the warrant (ECF #205-1, p. 39)) or whether it was a courtesy return to the house of Defendant's car after his arrest. In either case, it would be a significant stretch of the imagination to believe that the warrant was flagrantly disregarded by this action. The same holds true for the motorcycle. The Government asserts that it initially intended to seize the motorcycle pursuant to a potential forfeiture, which would be more easily

7

accomplished if the motorcycle could be driven from the residence rather than towed. To that end, it was driven around the block—no evidence was provided that it was searched. Co-Defendant Matos states that she "later noticed a chip in the paint" of "her" motorcycle (ECF #37, p. 6). Again, the Court finds nothing flagrant about this action and further finds that the potential seizure falls squarely within the "fruits" catchall at the beginning of attachment B (ECF #205-1, p. 40). For those reasons, nothing related to the vehicles in any way invalidates the search.

Damage of Property

Defendant asserts that agents broke personal items, "including a television, two cameras, [] arts and crafts materials," threw a computer against the wall, and "trashed" the house (ECF #37, p. 6). The Court has carefully reviewed the testimony from the motion hearing in this matter (ECF #278), the pictures before and after the search (Exhibits F, G, I, J, & K), and the arguments of the parties on this topic. Contrary to Defendant's arguments and assertions, the evidence shows that the warrant was thoroughly and professionally executed. To be clear, none of us wants to have our home or possessions searched. At best such an intrusion into one's castle is disturbing, frightening, and a significant disruption of daily life. At worst, it is all of the above along with an arrest for serious drug crimes or other charges. Yet, as intrusive as such a search no doubt is, in this case the evidence shows it to have been conducted professionally, thoroughly, and even courteously. Defendant's own pictures on the subject, those exhibits referenced by letter *supra*, show the completeness of the search. They do not evidence activity exceeding the scope of the search warrant or a flagrant disregard of the

8

warrant. The same is true for the specious argument that leaving the warrant and inventory with Ms. Matos, either by handing it to her personally or throwing it on the living room table (ECF #37, p. 37). Rule 41 was not violated by these actions. The proper steps were taken pursuant to Rule 41(f)(1)(C) to leave a receipt, inventory, and the warrant at the scene upon departure. For those reasons, the motion should be denied as to this topic.

The iPhone Search

Defendant Holder was arrested after a vehicle stop near his home. Law enforcement, for safety purposes, allowed him to leave, then conducted a traffic stop utilizing a uniformed officer, and effectuated the arrest. Incident to arrest, Defendant's telephone was seized and placed into evidence. Defendant was arrested on August 21, 2018. A warrant was sought and granted for the phone on September 4, 2018 (ECF 205-2).

Defendant first argues that there was some sort of agreement to return Defendant's property to his wife and that the Court Ordered such return. *See* Defendant's motion (ECF #40, p. 2). That is wrong. During Defendant's Court appearance on August 21, 2018, Defendant's Counsel broached the return of Defendant's property to Defendant's wife "to the extent it can be released." Transcript (ECF #275, p. 6). The remainder of the conversation evidences an agreement to return those items of personal property that the Government did not want, e.g., not including items of evidentiary value, to Defendant's wife. *Id*. The phone was not returned as it had evidentiary value and the Government later sought a warrant to search the phone.

Defendant next argues that the delay between seizure of the cell phone on August 21, 2018 and the procurement of a warrant on September 4, 2018 was unreasonable. Defendant's supplement (ECF #40, p. 2). While Defendant appropriately cites *Riley* for the proposition that a cell phone cannot be searched without a warrant—this is irrelevant as a warrant was sought and granted prior to the phone being searched. *See Riley v. California,* 134 S.Ct. 2473 (2014). Defendant also argues that the search of the phone was overbroad, lacking in particularity, and was tantamount to a general warrant. Defendant's second supplemental motion (ECF #205, p. 2). Defendant asserts that the warrant essentially allowed the Government to search all the nooks and crannies of the phone including forensically imaging text messages, call logs, contacts, and social media. *Id* at p. 3. Defendant argues that the warrant did not appropriately limit the scope of the search of the phone. *Id*. at p. 4. Defendant relies on the 10th Circuit ruling in *United States v. Russian*, 848 F.3d 1239 (10th. Cir. 2017) for the proposition that the search in this action was violative of the Fourth Amendment.

The search of the phone in this matter was subsequent to Defendant's arrest on an outstanding warrant for that arrest and the seizure of that phone incident to the arrest—not the search of the home pursuant the warrant at 205-1. Defendants argue that in some way the Government set-up an unreasonable delay by waiting for Defendant to leave the residence and arresting him off-site (testimony indicated this was done for the safety of all concerned as evidence indicated that Defendant Holder illegally possessed one or more firearms and law enforcement wanted to insure Defendant did not barricade himself in a residence) and then waiting approximately two-weeks to get the warrant to search the phone. First, the Court finds nothing inappropriate about a determination to contact

Defendant Holder off-site rather than during the search of the home. Whether it was for safety reasons or other purposes, an arrest warrant existed for Defendant Holder and law enforcement could choose when and where to execute the warrant.

In terms of any delay in seeking a search warrant for the telephone prior to the search, the 10th Circuit has adopted a totality of the circumstances test to determine the reasonableness of a delay in seeking a warrant. *See U.S. v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013). The Court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. (internal citation removed).

Here, the Court cannot say that an individual's interest in their cell phone is insignificant. In fact, most of the data we need to conduct our daily lives is stored on our phones, with some individuals possessing a back-up device and others not. However, from a practical perspective, Defendant Holder was not going to use his phone as he was held in custody. The delay in seeing a warrant in this matter was two weeks. The Court was presented evidence of the extensive search of the home and common sense indicates that numerous officers would be tied up for many days cataloging and otherwise dealing with the results of the search. Special Agent Smith also indicated that other workload duties prevented him from seeking the search warrant for two weeks. Under the circumstances, looking at the totality of the circumstances, the Court does not find a two week delay unreasonable and does not believe the search should be suppressed on that basis.

Defendant also attacks a perceived lack of particularity in this warrant. This is critical because "[a] warrant isn't ever supposed to be a license for just a general

11

rummaging." *United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005) (internal quotation remarks removed). The particularity requirement is satisfied here, at least as to the phone itself, because it is clear that the item to be seized and searched is the iPhone described with specificity in the warrant. *See United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988).

The challenge interposed in this action by the Defense addresses the nature of the search and the "any and all" language contained in attachment B (ECF #205-2, p. 4). Defendant fails to acknowledge that a warrant is valid if it limits the scope of the search to evidence of specific federal crimes. *See Christie*, 717 F. 3d 1166; *see also U.S. v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017). Here, the plain language of attachment B limits the "any and all" search to "violations of Title 21, United States Code, § 841(a)(1)" (ECF #205-2, p. 4). This raises the issue of how the Government could cabin off the search of a portion of an item if the evidence sought could not possibly be in a particular place, e.g., the Government is exceedingly unlikely to find an entire elephant in a purse and thus cannot search a purse looking for an elephant. Here, as addressed by the affidavit submitted by the Government, digital information can be hidden in many files and formats (ECF #205-2, p. 12, para. 11 G). Thus, it is necessary to view each file to determine whether the file is of evidentiary value. The practical way to limit such a search is to base the limitation on the nature of the offense being investigated rather than closing off the nooks and crannies of a phone.

Defendant also raises what the Court considers to be a Scribner's error as an issue (for the first time at oral argument). The application sheet for the warrant lists the correct

charge for which the warrant is being sought but states that the drug was "heroin" (ECF #205-2, p. 2). All remaining documents discuss the fact that the substance was fentanyl. The Court finds that the warrant was based on probable cause and identified with particularity the item to be searched, the place(s) to be searched within the item, and the information for which law enforcement was authorized to search. Unlike the warrant in *U.S. v. Russian*, 848 F.3d 1239 (10th Cir. 2017) (the search was upheld under the good faith exception despite the lack of particularity), which failed due to lack of particularity as it did not identify the items to be searched nor what information law enforcement could seize, the warrant here does not suffer from those same flaws. The phone is precisely identified. The items for which law enforcement could search were also identified with particularity. The "any and all language," rather than being a fatal flaw, was merely explanatory of what the Government could seek within certain categories.

The Scribner's error, inadvertently stating "heroin" in one location on the application sheet, is inconsequential. The remainder of the warrant was clear as to what was sought—fentanyl. The face sheet and all other parts of the warrant, affidavit, and application appropriately listed the statute believed to have been violated (18 U.S.C. § 841 (a)(1), (b)(1)(A)(i)) and the fact that this was a fentanyl investigation—not a heroin investigation. The officers involved with the investigation and the search knew what they were looking for. There is no indication, based on the erroneous word "heroin," that officers went haring off in some different direction and searched some inappropriate location seeking heroin rather than fentanyl. From a practical perspective, the locations to be searched for heroin and fentanyl would likely be the same—no one has identified

how a search would have been conducted any differently based on the one-time substitution of the word heroin for fentanyl.

For all of the foregoing reasons, the warrant for the search of the iPhone meets Constitutional muster and should not be suppressed.

The iPad Search

During the search of the residence, an iPad was located in the living room. Transcript (ECF #278, p. 53) (this iPad is distinguished from 2nd iPad which was found elsewhere in the residence, determined to be broken, and not taken). The iPad in question (Matos' iPad) was taken and searched and downloaded by the Grand Junction Police Department on 8/24/2018. Transcript (ECF #278, pp. 54-55). Ms. Marie Matos identified the iPad as hers and provided law enforcement with the password. Transcript (ECF #278, pp. 139-140). The Defense asserts that the search of the iPad does not pass Constitutional muster due to failings with the warrant and asserts that the good faith exception does not apply.

Here, the uncontroverted evidence is that Marie Matos claimed ownership of the iPad and provided law enforcement with the password necessary to access the device. To challenge a search and seizure on fourth amendment grounds, Defendant Holder must prove that he had a reasonable expectation of privacy in the place searched or the item seized. *See Rawlings v. Kentucky,* 100 S.Ct. 2556, 2561 (1980). Defendant Holder's rights were not violated as to the iPad because the search did not invade his legitimate expectation of privacy as the iPad belonged to another. *See United States v. Payner,* 100 S.Ct. 2439, 2444 (1979). The Supreme Court has stated that "[L]egitimization of

expectations of privacy by law must have a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois,* 99 S.Ct. 421, 431 (1978). In assessing the defendants' expectations of privacy, the court looks to the totality of the circumstances. *See,* e.g., *Rawlings,* 100 S.Ct. at 2561. Here, the totality of the circumstance shows that Marie Matos claimed ownership of the iPad—a claim which is uncontroverted—and provided the password to law enforcement. The Court finds that Defendant Holder had no legitimate expectation of privacy in the contents of the iPad and that the search of the iPad in no way violated the rights afforded Defendant under the Constitution.

Even if Defendant Holder had an expectation of privacy in the iPad, the search was authorized by the warrant. The warrant specifically allowed searches of all computer equipment and an iPad undoubtedly fell within that paragraph (ECF #205-1, p. 5, para. 12). Defendant's argument that the warrant fails to pass Constitutional muster by being an "any and all" warrant fails for the same reasons discussed *supra* with regard to the iPhone warrant. The warrant here limits all searches to "[e]vidence, fruits, and/or instrumentalities of violations of Title 21, United States Code, Sections 841 (a)(1) and 846; and Title 18, United States Code, Section 924 (c) . . ." Warrant Attachment B (ECF #205-1, p. 4). Because the warrant is supported by probable cause—I adopt the analysis from my review of the affidavit and warrant for the home, *see supra,* because the warrant describes with particularity the type of item to be searched—computer equipment, and because the warrant sufficiently limits the search to evidence of the particular crime at issue, Defendant's motion should be denied.

Good Faith

Even if a warrant fails to satisfy the Fourth Amendment's particularity requirement, the exclusionary rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate judge that is ultimately deemed invalid. *United States v. Leon*, 104 S.Ct. 3405, 3420 (1984). The rationale for *Leon*'s good faith exception is the underlying purpose of the exclusionary rule—namely, to deter police misconduct. When an officer acts in good faith, there is nothing to deter. *Id.* at 3418.

An officer's reliance on a defective warrant still must be objectively reasonable: the government is not entitled to the good faith exception when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id* at 3420-21. "The test is an objective one that asks whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *U.S. v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009). "Not every deficient warrant, however, will be so deficient that an officer would lack an objectively reasonable basis for relying upon it." *Id.* at 1134.

While the Court believes that that each of the challenged searches was supported by a warrant with sufficient probable cause and particularity to pass Constitutional muster, the Court has also considered whether, if there was some failing with any of the warrants, the good faith exception would apply in this case. I find that the searches in this case were objectively reasonable under the circumstances. Any failings in the warrant were not so deficient that an officer would have lacked a good faith basis for

his/her reliance on the warrant(s). Here, the warrants carefully outlined the course of the investigation, the place or items to be searched, and the evidence to be searched for based on the crime at issue. The warrants were presented to this Magistrate Judge, sworn, signed, and issued to law enforcement. The searches were confined to the four corners of the warrants. Suppression under these circumstances would not serve to bolster the underlying purpose of the exclusionary rule—to deter police misconduct—as law enforcement had every reason to believe they were relying on valid warrants issued by a neutral and detached judicial officer. For those reasons, the good faith exception would uphold the searches conducted in this action.

Wherefore it is respectfully recommended that Defendant's motion(s) to suppress be DENIED.

Dated December 21, 2019.

BY THE COURT:

_____
Gordon P. Gallagher
United States Magistrate Judge