IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORDO
SENIOR JUDGE MARCIA S. KRIEGER

Criminal Case No. 18-cr-00381-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **BRUCE HOLDER,**
2. LEXUS HOLDER,
3. CORINA HOLDER,
4. GERI BOCHMANN,
5. JESSICA BRADY, and
6. MARIE MATOS,

    **Defendants.**

---

## OPINION AND ORDER OVERRULING OBJECTIONS
---

**THIS MATTER** comes before the Court pursuant to Mr. Holder's Objections **(# 301, 302, 303)** to various rulings or recommendations by the Magistrate Judge, as discussed in more detail below.

## FACTS

The Second Superseding Indictment **(# 183)** charges Mr. Holder with six counts: (i) engaging in a conspiracy to distribute fentanyl in violation of 21 U.S.C. § 846; (ii) distribution of a controlled substance (fentanyl) resulting in death, namely, the death of victim J.E., in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (iii) distribution of a controlled substance (fentanyl) resulting in serious bodily injury, namely, to victim Z.G., in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (iv) distribution of a counterfeit controlled substance (that is, drugs purporting to be manufactured by Mallinckrodt, Inc. when, in fact, they were not) in violation of 21 U.S.C. §

841(a)(2) and (b)(1)(C); (v) distribution of fentanyl in or about June 2018, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (vi) distribution of a counterfeit controlled substance (drugs purporting to be manufactured by Mallinckrodt, Inc.), in or about June 2018, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Mr. Holder filed various pretrial motions, and the Court referred those motions to the Magistrate Judge for rulings or recommendations, as appropriate. The Magistrate Judge issued those rulings and recommendations, and Mr. Holder timely filed the instant Objections **(# 301, 302, 303)**.

## ANALYSIS

**A. Rule 404(b) Evidence**

1. Background

At Mr. Holder's request, the Government gave notice of the evidence it intended to offer at trial under Fed. R. Evid. 404(b) **(# 46)**. The Government's notice identified five categories of evidence that the Government intended to offer pursuant to Rule 404(b): (a) evidence that various witnesses had purchased fentanyl directly from Mr. Holder or had observed others doing so; (b) evidence that a witness traveled to Mexico with Mr. Holder for the purpose of Mr. Holder refreshing his supply of fentanyl pills; (c) evidence that a law enforcement agent made a controlled purchase of fentanyl pills from a witness ("W-14"), that W-14 obtained the pills from another witness ("W-5"), and that W-5 obtained the pills directly from Mr. Holder; (d) evidence that Mr. Holder distributed fentanyl pills to Tanner Crosby, who died from a drug overdose involving fentanyl and other substances, that a search of Mr. Crosby's residence located fentanyl pills in a baggie with a penguin logo on it, and that similar baggies were located in Mr. Holder's

home during a search; (e) evidence that after his arrest, Mr. Holder directed his wife to delete the contents of an iPad in order to conceal evidence of his fentanyl distribution.

Mr. Holder moved **(# 204)** to exclude that evidence, arguing that: (i) the Government had not specifically articulated the relevant purposes or particular inferences that should be drawn from each item, warranting the wholesale exclusion of all of the noticed evidence; and (ii) that there are factual inconsistencies or other defects in the inferences that the Government draws from its own evidence, such that the evidence is not as probative of the matters for which the Government proffers it.

This Court referred Mr. Holder's motion to the Magistrate Judge for consideration. On November 27, 2019, the Magistrate Judge issued an Order **(# 283)**, finding that: (i) as to categories (a), (b), and (c) above, as the result of the Government filing a recent Superseding Indictment that broadened charges against Mr. Holder, evidence that might previously have been cognizable under Rule 404(b) was now direct evidence of the specific criminal acts charged against Mr. Holder and thus, not subject to Rule 404(b) analysis; and (ii) evidence relating to the death of Tanner Crosby and the evidence of Mr. Holder directing his wife to erase the iPad were not Rule 404(b) evidence because they involve events that occurred within the course and scope of the drug distribution conspiracy newly-charged in the Superseding Indictment. Thus, the Magistrate Judge denied Mr. Holder's motion, finding that "the evidence the Government seeks to introduce is not subject to Rule 404(b) review."

Mr. Holder filed timely objections **(# 301)** to the Magistrate Judge's order pursuant to 28 U.S.C. § 636(b)(1)(A). Mr. Holder argues that: (i) the Magistrate Judge erred in finding that evidence relating to the death of Mr. Crosby was not Rule 404(b) evidence, as Mr. Crosby's drug use and subsequent death is not encompassed within any of the counts in the superseding

3

indictment, and must therefore be collateral evidence offered under Rule 404(b); and (ii) the Magistrate Judge erred in concluding that Mr. Holder's alleged instructions to his wife to erase the iPad was not Rule 404(b) evidence simply because the event occurred during the life of the conspiracy charged in the Superseding Indictment and that such evidence should be excluded under Rule 404(b).

2. Standard of review

Because Mr. Holder's motion to exclude addresses an evidentiary issue and does not otherwise dispose of a claim or defense, his objections to Magistrate Judge Gallagher's rulings on that motion are cognizable under 28 U.S.C. § 636(b)(1)(A). Thus, the Court reviews Magistrate Judge Gallagher's denial of the motion to exclude to determine whether it is "clearly erroneous or contrary to law." A ruling is "clearly erroneous" where, after reviewing the entirety of the evidence, this Court is "left with the definite and firm conviction that a mistake has been committed." *Allen v. Sybase, Inc.*, 468 F.3d 642, 659 (10th Cir. 2006).

Fed. R. Evid. 404(b)(1) provides that evidence that a person engaged in "a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion[,] the person acted in accordance with that character." However, Rule 404(b)(2) provides that such acts may be admissible for non-character purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In addition to meeting the facial criteria of Rule 404(b)(2), the evidence must also be relevant under Fed. R. Evid. 402, survive the balancing test of Fed. R. Evid. 403, and should be subjected to an appropriate limiting instruction under Fed. R. Evid. 105. *U.S. v. Isabella*, 918 F.3d 816, 840 (10th Cir. 2019).

3. Mr. Crosby's death

This Court finds that the Magistrate Judge did not err in concluding that the evidence the Government intends to proffer with regard to Mr. Crosby's death is not evidence falling within the scope of Rule 404(b). According to the Government's proffer, the Government intends to put on evidence that[1]:

• <u>Witness W-2 will testify that Mr. Holder distributed fentanyl to Mr. Crosby.</u>

This Court finds that such evidence is not being offered to prove Mr. Holder's "character," but rather, is evidence that is being offered to prove exactly what is charged in Count 1 of the Second Superseding Indictment – that Mr. Holder distributed fentanyl between June 2017 and January 2019. The Government's proffer does not indicate when W-2 witnessed Mr. Holder distributing the fentanyl to Mr. Crosby, but a fair inference is that such distribution occurred closely in time to Mr. Crosby's death on May 19, 2018, placing that distribution squarely within the time period of the conspiracy charged in the Second Superseding Indictment. As such, this is evidence that is intrinsic to the charged crime, and thus falls outside the scope of Rule 404(b). *See U.S. v. Duncan*, 766 Fed.Appx. 604, 608 (10th Cir. 2019).

• <u>Mr. Crosby died from a mixed drug overdose on May 19, 2018, and that fentanyl was among the drugs found in his body at that time.</u>

Neither of these facts are being offered to "prove a person's" – presumably, Mr. Crosby's – "character," much less show that, on some other occasion, Mr. Crosby "acted in accordance with that character." If, for example, this were an auto accident case and the question for trial was "was Mr. Crosby under the influence of an illegal drug at the time of the accident in March 2018?," evidence that Mr. Crosby died of a drug overdose in May 2018 might be evidence of Mr.

---

[1] The Government's response to Mr. Holder's objections appears to offer an additional fact not found in the initial proffer: that there were "numerous communications between [Mr. Holder] and Mr. Crosby, [ ] often in coded language, show[ing] that [Mr. Holder] frequently worked with Mr. Crosby to distribute" the fentanyl.

Crosby's character (a user of illegal drugs), used to show that on a different date (May 2018), Mr. Crosby acted in conformity with that character trait (by again using illegal drugs). In that circumstance, Rule 404(b) would control whether evidence of Mr. Crosby's overdose in May 2018 was proof that he engaged in the similar bad act of illegal drug use in March 2018. But here, even assuming that the fact that Mr. Crosby died of a drug overdose is somehow evidence of "character" – and the Court doubts that it is – Mr. Crosby's character is utterly irrelevant to the charges against Mr. Holder. Thus, this is not evidence governed by Rule 404(b) at all.

- <u>A post-mortem search of Mr. Crosby's apartment yielded fentanyl pills "similar in appearance to the pills charged in this case," and that such pills were found "in a distinctive baggie with penguin logos on it."</u>

This is not evidence of a "crime, wrong, or other act" by a person (presumably, Mr. Crosby), nor is it offered to prove that person's character. It is simply a fact: drugs found in Mr. Crosby's home were distinctively packaged. Thus, it is not Rule 404(b) evidence.

- <u>A search of Mr. Holder's house revealed "these same distinctive baggies" in Mr. Holder's bedroom.</u>

The Court has doubt that possession of baggies is the type of "crime, wrong, or other act" contemplated by Rule 404(b). The mere possession of "distinctive baggies" is not the kind of action that "might adversely reflect on [Mr. Holder's] character." *See Huddleston v. U.S.*, 485 U.S. 681, 685 (1988). Not every action by a defendant is the type of "bad act" governed by Rule 404(b). The fact that a defendant chooses a particular brand of gum, or drives a certain kind of car, or, indeed, possesses a certain type of baggie, is not the type of "crime, wrong, or act" contemplated by Rule 404(b). Rather, the rule is concerned with those types of actions that demonstrate that a person possesses certain disreputable or unsavory characteristics. If the Government were to take the position that Mr. Holder's possession of penguin logo baggies was probative simply because "drug dealers are known to use penguin logo baggies," an argument

that his possession of such baggies reflected his character as a drug dealer might give rise to Rule 404(b) concerns. But the Government has not made such an argument here. Mr. Holder's possession of penguin logo baggies is probative because Mr. Crosby's fentanyl was packaged in penguin logo baggies. Thus, Mr. Holder's possession of such baggies is not offered to prove Mr. Holder's character, but simply, his possible status as the distributor of the fentanyl consumed by Mr. Crosby. Thus, this Court agrees with the Magistrate Judge that this was not evidence governed by Rule 404(b).

Even assuming it was, though, this evidence would remain admissible under Rule 404(b)(2). Proof that the drugs possessed by Mr. Crosby were found in distinctive packaging that Mr. Holder possessed in quantity would be probative for establishing the identity of the person who provided those drugs to Mr. Crosby (whether directly or indirectly). As such, even if this fact were Rule 404(b) evidence – and the Court believes it is not – the evidence would nevertheless fall within Rule 404(b)(2)'s exception.

- <u>Witness W-2, and a second witness identified as W-4, "both confronted [Mr. Holder] regarding their belief that [Mr. Holder] distributed the pills that caused Mr. Crosby's death."</u>

It is not at all clear that this evidence describes an "act" by anyone other than witnesses W-2 or W-4, and that act has nothing to do with a trait of their character. Thus, this is not Rule 404(b) evidence.

To be sure, a conclusion that the evidence is not subject to analysis under Rule 404(b) does not mean that the evidence will necessarily be deemed admissible at trial. The Court expresses no opinion as to whether some or all of the evidence proffered by the Government regarding Mr. Crosby, or any other matter, will survive the balancing test of Rule 403 or objections on grounds such as relevance or cumulativeness. Those matters are not properly before the Court this time and will need to be raised at the appropriate time during trial.

Nevertheless, the Court agrees with the Magistrate Judge that all of the Government's proffered evidence regarding the facts surrounding Mr. Crosby's death is not controlled by Rule 404(b).

4. <u>Mr. Holder's instructions to his wife</u>

At the time of Mr. Holder's arrest, agents seized a cell phone and iPad, which were believed to contain evidence of Mr. Holder's fentanyl distribution. Shortly after that arrest, Mr. Holder spoke to his wife in a phone call that was recorded by jail authorities. The Government describes (but does not transcribe) the contents of this call as "[Mr. Holder] and his wife discussed remotely wiping the devices . . . to prevent the government from accessing the information contained on the devices."[2] Later, at his detention hearing, Mr. Holder "admitted that he sought to attempt to wipe the devices, but claimed that he did so to prevent the government from seeing private images on the devices."

The Court will assume that a person's attempts to erase electronic data to obstruct prosecution is the type of "crime, wrong, or act" contemplated by Rule 404(b). But it does not necessarily appear to the Court that the Government is offering proof of that act by Mr. Holder to demonstrate an aspect of his character. At best, it could be suggested that the Government's argument is intended to paint Mr. Holder as having a dishonest character, or one cognizant of his own guilt. But even so, the essential characteristic of Rule 404(b) evidence is that it is used to show that, on <u>some other occasion</u>, the defendant "acted in accordance with that character." Thus, to constitute Rule 404(b) evidence, the Government must be intending to prove that, at some point in time <u>other than</u> when he was directing his wife to erase the phone and iPad, Mr.

---

[2] The Court understands that Mr. Holder disputes this description of the evidence. He offers his own version of events in which his wife simply reported to him that she had attempted to wipe the devices on her own, and that Mr. Holder simply responded "ok." Nevertheless, the Court will analyze the Government's version of the events in order to provide the parties with the most complete ruling.

Holder's actions were consistent with that dishonest or guilt-conscious character.  Nothing in the Government's proffer suggests that this is the Government's approach.  Rather, the Government's proffer describes a single event – the instruction to his wife to erase the devices – to demonstrate that, at the time of that event, Mr. Holder demonstrated awareness of his wrongdoing.  Thus, this is not evidence governed by Rule 404(b).

Even assuming it is, however, the Court agrees with the Government that it nevertheless falls outside of Rule 404(b) for a different reason: that it is evidence intrinsic to the operation of the conspiracy.  Although Mr. Holder was arrested in August 2018 **(# 7)**, the Second Superseding Indictment alleges that the conspiracy continued to operate through January 2019.  The Government's proffer does not indicate when Mr. Holder allegedly instructed his wife to wipe the devices, but it does appear to suggest that this event occurred before Mr. Holder's detention hearing on August 27, 2018 **(# 11)**.  Thus, it is a fair conclusion that the conspiracy remained in operation despite Mr. Holder's arrest and that his instructions to his wife to erase the devices and conceal evidence of the conspiracy's operation was itself an act in furtherance of the conspiracy.  *U.S. v. Alcorta*, 853 F.3d 1123, 1139 (10th Cir. 2017).

Accordingly, the Court finds that the Magistrate Judge correctly determined that the Government's proffer regarding the facts surrounding the death of Mr. Crosby and Mr. Holder's instructions to his wife did not implicate the operation of Rule 404(b).  Thus, that rule did not control the admissibility of the evidence.  Therefore, the Court overrules Mr. Holder's objections and affirms the Magistrate Judge's ruling denying his motion to exclude.

**B.  Motion to dismiss**

Count 5 of the Second Superseding Indictment charges Mr. Holder with distributing fentanyl in June 2018.  Count 6 charges him with distributing a counterfeit controlled substance

– drugs that purported to be manufactured by Mallinckrodt, Inc. but which were not – in June 2018.

On September 3, 2019, Mr. Holder moved **(# 202)** to dismiss either Count 5 or Count 6, arguing that the two counts were multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution. Mr. Holder alleged that the two counts charged the identical conduct – distribution of fentanyl pills in June 2018 that falsely bore a Mallinckrodt trademark. The Government responded **(# 248)**, acknowledging that the two counts relied upon the same conduct, and thus "Counts 5 and 6 are multiplicitous." But the Government argued that the doctrine of multiplicity operated to ensure that a defendant "will [not] receive more than one sentence for a single offense," such that the Government could charge and prove multiplicious offenses, and would only have to elect post-verdict the charge on which it intended to proceed to sentencing.

The Court referred the motion to the Magistrate Judge for a recommendation. On November 27, 2019, the Magistrate Judge recommended **(# 284)** that Mr. Holder's motion be denied. Relying on *U.S. v. Bolt*, 776 F.2d 1463, 1467-80 (10th Cir. 1985), the Magistrate Judge found that there was a possibility of a split jury verdict between Counts 5 and 6 (*i.e.* that the jury might find that the pills distributed by Mr. Holder were fentanyl but did not bear a false trademark, or that they bore a false trademark but were not fentanyl). Thus, the Magistrate Judge recommended that the Court allow both counts to proceed to trial, but allay any issue of potential prejudice to Mr. Holder by means of an appropriate jury instruction (that the Government was directed to craft).

Mr. Holder filed timely objections **(# 302)** to the Magistrate Judge's recommendation, arguing: (i) the Magistrate Judge misapprehended *U.S. v. Johnson*, 130 F.3d 1420 (10th Cir.

1997), and that *Johnson* actually favors requiring the Government to make an election of counts prior to trial; (ii) that "there is no variation in proof between the counts" because the same pills support both Claim 5 and Claim 6; and (iii) allowing both claims to proceed will amount to a prejudicial "piling on."

Because Mr. Holder's motion seeks the dismissal of a count, the Magistrate Judge's recommendation is governed by 28 U.S.C. § 636(b)(1)(B), and the Court reviews Mr. Holder's objections *de novo*.

The Government having conceded that Counts 5 and 6 are multiplicitous, the Court takes that conclusion as established.[3] Multiplicity is "not fatal to an indictment," and indeed, "the government may charge and even submit multiplicitous counts to the jury," so long as the defendant is not sentenced on both counts. *U.S. v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006); *U.S. v. Baum*, 542 Fed.Appx. 724, 726 (10th Cir. 2013). If multiplicitous charges are brought, and the trial court is "satisfied that there is sufficient proof to go to the jury on both counts, [it] should instruct the jury as to the elements of each offense"; but upon a guilty verdict as to both counts, the trial court "should enter judgment on only one of the statutory offenses." *Ball v. U.S.*, 470 U.S. 856, 865 (1985).

In *U.S. v. Johnson*, 130 F.3d 1420 (10th Cir. 1997), the court considered a defendant's contention that, although he was not ultimately punished for multiplicitous counts, the court's

---

[3] 21 U.S.C. § 841(a)(1), cited in Count 5, prohibits the distribution of a "controlled substance." 21 U.S.C. § 841(a)(2), cited in Count 6, prohibits the distribution of a "counterfeit substance." The statute defines a "counterfeit substance" as a "controlled substance which . . . bears [a false] trademark." 21 U.S.C. § 802(7). Thus, all "counterfeit substances" are also "controlled substances," and proof of Count 6 will necessarily require the Government to prove Count 5 as well. But it does not appear that proof of Count 5 requires the Government to establish any fact that it would not have to establish in order to prove Count 6 as well. *See Blockburger v. U.S.*, 284 U.S. 299 (1932) (charges are distinct if each requires proof of an element that the other does not). In that sense, Count 5 is a lesser included offense of Count 6.

11

failure to dismiss one of the two counts prior to trial "was prejudicial because it allowed the government to introduce evidence at trial" that would not otherwise have been permitted. The 10th Circuit considered the issue of "whether the district court erred in refusing to require the government to elect between the two firearm counts prior to trial" (conceding that the issue "is within the discretion of the trial court"). It explained that the risk of not requiring pre-trial election "is that it may falsely suggest to a jury that a defendant has committed not one but several crimes," and that, in such circumstances, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges." (*Johnson* found that the trial court there had not abused its discretion because "the possibility (albeit slim) existed that Johnson could be convicted on one count and acquitted on the other" and that there was "little if any risk that evidence pertaining to the multiple firearm counts resulted in the jury reaching a compromise verdict or in assuming Johnson's guilt on one or more of the counts.")

Taken together, *Ball* and *Johnson* explain that a trial court may allow multiplicitious charges to go to the jury, but it should decline to do so if the combination of charges unduly suggest to the jury that the defendant has committed numerous crimes or if there is reason to believe that the jury might become confused by the various charges and default to a compromise verdict. *Johnson* further suggests that the ability of the jury to find the defendant guilty on one count but not the other could favor allowing both charges to proceed to trial.

This Court agrees with the Magistrate Judge that, as in *Johnson*, there is some possibility – again, admittedly slim – that the jury could convict Mr. Holder on Count 5, but not on Count 6. It appears to be undisputed that all of the substances distributed by Mr. Holder consist of blue fentanyl pills, stamped with an "M 30" marking similar to that found on Mallinckrodt's

oxycodone pills. The jury could conclude that the pills were indeed fentanyl, and thus "controlled substances" sufficient to satisfy Count 5, yet find that the markings on the pills were not sufficiently similar to (or, at the very least, that Mr. Holder did not know that they were similar to) the Mallinckrodt mark, preventing the conclusion that the pills were "counterfeit." Moreover, this Court agrees with the Magistrate Judge that any risk of prejudice to Mr. Holder from being tried on both Counts 5 and 6 simultaneously – and this Court is not persuaded that such prejudice is present here – can be alleviated through the careful crafting of jury instructions. Accordingly, the Court overrules Mr. Holder's Objections, adopts the Recommendation, and denies Mr. Holder's Motion to Dismiss.

### C. Motion *In Limine*

On September 3, 2019, Mr. Holder filed a Motion *In Limine* **(# 207)**, asking that six categories of evidence be excluded from trial: (i) statements made by Jamie Aragon about the source of the pills he overdosed on, which Mr. Holder contends constitutes inadmissible testimonial hearsay; (ii) evidence regarding Mr. Aragon's subsequent suicide, which Mr. Holder contends would be irrelevant to the charges herein and unduly prejudicial; (iii) evidence regarding Mr. Holder's prior convictions from 1993 for marijuana possession and possession of a firearm, as well as a 2003 conviction for possession of a firearm; (iv) statements that third parties gave to law enforcement about Mr. Holder's sales of drugs other than the fentanyl at issue and evidence of Mr. Holder accepted guns as payment for drug sales, all of which Mr. Holder argues is inadmissible under Rule 404(b) and which is irrelevant and unduly prejudicial; (v) the Government's use of the word "cartel" to describe Mr. Holder's activities, because that word has inaccurate and prejudicial connotations; and (vi) questions to witnesses that ask them to speculate about the contents of the pills they received from Mr. Holder, if they did not know at

the time, because such evidence would reflect hearsay that those witnesses learned of only after Mr. Holder's arrest.

The Court referred the motion to the Magistrate Judge. On November 27, 2019, the Magistrate Judge granted in part and denied in part **(# 285)** the motion. Specifically, the Magistrate Judge ordered: (i) that statements made by Jamie Aragon would be excluded; (ii) that the fact of Mr. Aragon's suicide was admissible simply to explain his inability to testify at trial; (iii) the fact that Mr. Holder is a felon is admissible to explain why the conspiracy engaged in certain mechanics (that is, why Mr. Holder insisted that other witnesses drive his fentanyl-laden truck across the U.S.-Mexico border while Mr. Holder crossed on foot, as his status as a felon would otherwise have increased the chances of a vehicle search), but the details of his prior convictions are not admissible; (iv) that evidence that Mr. Holder accepted firearms as payment for drugs was admissible, and that the question of whether his distribution of other drugs could be the subject of evidence was premature, as it was not clear whether the Government would tender such evidence; (v) that use of the word "cartel" by witnesses to describe Mr. Holder's activities was permissible; and (vi) that issues about witnesses testifying as to the contents of the pills they took were not sufficiently ripe at this time, and that the admissibility of such testimony would have to be evaluated in context at the time of trial.

Mr. Holder filed timely Objections **(# 303)** to the Magistrate Judge's Order. He contends that: (i) the Magistrate Judge erred in finding that Mr. Aragon's death was relevant to explain his absence from trial because the Government has no burden to explain why a witness will not testify; (ii) the Magistrate Judge erred in concluding that Mr. Holder's status as a felon was *res gestae* that helped explain the mechanics of the conspiracy; (iii) the Magistrate Judge erred in concluding that evidence about Mr. Holder's sales of other drugs was unripe was incorrect; and

(iv) that the Magistrate Judge erred in finding that the word "cartel" has a non-prejudicial significance to this case.

For the reasons discussed previously, this Court reviews the objected-to portions of the Magistrate Judge's Order under 28 U.S.C. § 636(b)(1)(A), reversing only if the Magistrate Judge's conclusions are clearly erroneous or contrary to law.

This Court has a longstanding resistance to adjudicating motions *in limine* prior to trial, particularly those that turn in substantial part on a balancing of relevance and prejudice under Rule 403. The admissibility of a given item of evidence often turns on its precise content, but general descriptions of what a party intends to prove often fail to provide the necessary level of specificity. And the extent to which evidence is probative (and prejudicial) often depends in large part on the specific context in which it is offered at trial, yet that context cannot always be reliably anticipated at the time of a motion *in limine*. And, of course, parties rarely have finalized their trial strategy at the time of such motions, such that many items of evidence that the movant might oppose may never be offered at trial in any event. Thus, it has typically been this Court's practice to defer ruling on motions *in limine* that invoke these grounds, deferring the question of admissibility until the proponent is prepared to present the challenged evidence, at which time the Court can take a detailed proffer (outside the presence of the jury) and issue an informed ruling.

This case is no exception. The evidentiary items on which Mr. Holder continues to request a ruling are not well-suited for pretrial determinations of admissibility. For example, the question of whether the fact of Mr. Aragon's death itself is admissible presents a different evidentiary question than the admission of the cause of that death, which in turn presents a different question as to the circumstances of that death. At a minimum, this Court would be

inclined to permit the Government to elicit the fact that Mr. Aragon is deceased as the explanation for why he is not testifying at trial.  But the question of <u>how</u> Mr. Aragon died, much less <u>when</u> and <u>under what circumstances</u> are matters that begin to lose probative character (that is, as explanations as to why a witness is not present) and introduce increasing amounts of prejudicial character.  At the same time, testimony that "Mr. Aragon is dead," coupled with expected testimony about his drug overdose, may cause the jury to incorrectly infer that his overdose <u>was</u> the cause of that death; in these circumstances, Mr. Holder might actually <u>want</u> to elicit the fact that Mr. Aragon specifically died as a result of a suicide (without necessarily eliciting when that suicide occurred).  But even a finely-calibrated calculus as to what can and cannot be admitted can be upended by a stray and unexpected remark from a witness, potentially requiring the entire admissibility question to be approached anew now that the jury is privy to facts that neither the parties nor the Court expected them to have.  Thus, pretrial admissibility determinations are often inappropriate, insufficiently informed, and often unreliable.

Similarly, Mr. Holder's status as a felon might come up at trial in a variety of potential contexts.  Some of these might be admissible while others may not.  For example, the Government contends that it intends to have a witness testify that he accompanied Mr. Holder on a trip to Mexico to pick up fentanyl pills, that Mr. Holder told the witness that the pills had been loaded into compartments in the body of Mr. Holder's truck, and that it was necessary for the witness to drive the truck back across the border while Mr. Holder walked because, by Mr. Holder's own admission, he was a felon and the authorities would be more likely to search the truck if he were in it.  This evidence would likely be admissible, as the fact of the felony conviction is coming from the mouth of Mr. Holder himself and is indeed an explanation as to why Mr. Holder chose a particular method to import the drugs.  (Such a statement is not hearsay,

16

both because it is not being offered for its truth – it is equally possible that Mr. Holder lied to the witness about a prior felony conviction in order to cause the witness to drive the truck across the border – and because Mr. Holder's admission would be non-hearsay under Fed. R. Evid. 801(d)(2)(A).) In contrast, the Court might agree with Mr. Holder that a witness who is called simply to attest to the facts of Mr. Holder's prior convictions might not satisfy the Rule 403 balancing test. Separately, Mr. Holder requests a determination of whether the facts of his convictions could be used as impeachment against him under Fed. R. Evid. 609, should he elect to testify, as the Court's ruling might affect his decision as to whether to testify. But the Government has indicated in its response to Mr. Holder's Objections that "it does not intend to introduce [Mr. Holder's] prior convictions for impeachment purposes," and thus, this issue would appear to be moot.

Accordingly, the Court overrules, without prejudice, Mr. Holder's Objections to the Magistrate Judge's Order. Mr. Holder is free to raise, at the appropriate time, evidentiary objections to these categories of evidence and the Court will provide a precise ruling based on the evidence itself (as articulated by the witness or as proffered by the Government) and the context in which it is being presented.

## **CONCUSION**

For the foregoing reasons, the Court **OVERRULES** Mr. Holder's Objections **(# 301, 302, 303)**. It **ADOPTS** and/or **AFFIRMS** the Magistrate Judge's rulings or recommendations **(#**

**283, 284, 285)** as set forth herein. Mr. Holder's Motion to Dismiss **(# 202)**, Motion to Exclude Evidence Under Rule 404(b) **(# 204)**, and Motion In Limine **(# 207)** are **DENIED**.

Dated this 28th day of January, 2020.

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
Senior United States District Judge