IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-381-CMA-GPG-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **BRUCE HOLDER,**

    Defendant.

---

### DEFENDANT BRUCE HOLDER'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT [ECF NO. 646]

---

Mr. Bruce Holder, through counsel Patrick L. Ridley and Kristen M. Frost of the law firm Ridley, McGreevy & Winocur, P.C., and pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure respectfully submits his objections to the Presentence Investigation Report ("PSI"). ECF No. 646.

In support thereof, Mr. Holder states as follows:

**I.**    **Corrections To The PSI**

Mr. Holder asserts that in the section titled "Release Status" on page 2, the second sentence should read: "Total of 1457 days (approximately 48 months) presentence confinement as of August 17, 2022."

## II. Objections To The PSI

Mr. Holder respectfully lodges the following objections to the PSI, which include objections to adjustments and enhancements that form the basis for the base offense level of 58, objections to the relevant conduct section of the PSI and the fact that this Court should not consider acquitted conduct when sentencing Mr. Holder.[1]

### A. The Offense Level Computation

**Paragraph 74:** Mr. Holder objects to the application of the use of a dangerous weapon enhancement pursuant to §2D1.1(b)(1). The PSI incorrectly states that evidence was presented at trial that the defendant directed the purchase of firearms and received them in exchange for controlled substances. There was no such evidence that was presented at trial as acknowledged by the government. ECF No. 609 at 6-7. As will be discussed below in relation to relevant conduct, there is insufficient evidence for the Court to apply this enhancement because there is no reliable evidence that Mr. Holder used a dangerous weapon.

**Paragraph 76:** Mr. Holder objects to the application of the enhancement regarding the importation of methamphetamine from Mexico pursuant to §2D1.1(b)(5). There was no evidence of the importation of methamphetamine introduced at trial. As will be

---

[1] Paragraph 75: The PSI indicates that the government believes the use, credible threat of use or directing the use of violence, pursuant to § 2D1.1(b)(2) should apply. The Probation Department concludes that this offense characteristic should not apply. Mr. Holder agrees with this conclusion because there is insufficient evidence to support that enhancement and other enhancements based on that same conduct as will be discussed below. Mr. Holder also agrees with Paragraph 65 that concludes that restitution cannot be ordered in this case and will expand on that issue in his sentencing papers.

discussed below in relation to relevant conduct, there is insufficient evidence for the Court to apply this enhancement.

**Paragraph 79:** Mr. Holder's objections to this enhancement under §2D1.1(b)(16) are two-fold. First, based on the facts of this case there is insufficient proof to support this enhancement. Second, there will be a double counting problem where Mr. Holder is being improperly punished twice if the Court applies this enhancement as well the enhancements in Paragraphs 81, 82 and 83.

Section 2D1.1(b)(16) requires a two point increase if, in relevant part, the offense involved one or more of the following factors: (A)(i) the defendant used fear, impulse, affection *inter alia* to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances, (ii) the individual received little or no compensation from the illegal purchase, sale, transport or storage of the controlled substances, *and* (iii) the individual had minimal knowledge of the scope and structure of the enterprise.

Subsection (A)(i) cannot apply here because, as will be described below, there is insufficient evidence that Mr. Holder used fear, impulse, affection or some combination to involve others in drug possession and/or distribution. Further, to the extent that the Court disagrees and applies both Section 2D1.1(b)(16)(A)(i) and the obstruction of justice enhancement in Paragraph 83, this would constitute improper double counting and improperly increase the punishment against Mr. Holder for the same conduct.

Subsection (B)(i) involves, in relevant part, an increase where a defendant distributes a controlled substance to a person less than 18 years old or involves that person in the offense. Improper double counting will occur to the extent that the Court

applies this basis for this enhancement and also applies the enhancement in Paragraph 82 under §3B1.4 for involving a person less than 18 years of age in the offense.

Similarly, Subsection (C) cannot apply if the Court overrules Mr. Holder's objection to the application of the enhancement under §2D1.1(b)(5) in Paragraph 76 regarding methamphetamine. The relevant commentary under note 20 which relates to this enhancement under Section 2D1.1(b)(16) specifically states that if § 2D1.1(b)(5) applies that subsection (b)(16)(C) cannot apply. USSG § 2D1.1, comment. (n.20 (B)).

Subsection (D) does not apply because there is insufficient evidence, as will be discussed below, that Mr. Holder obstructed justice by tampering with or destroying evidence or engaged in witness tampering.

Subsection (E) does not apply because there is insufficient evidence that Mr. Holder committed the offense as a pattern of criminal conduct engaged in as a livelihood as those terms are defined under §4B1.3. *See* USSG § 2D1.1, comment. (n.20(C))(providing that those two terms should be defined as the terms are given meaning under §4B1.3). In this context, there is insufficient evidence that Mr. Holder "engaged in as a livelihood" because there is not evidence that Mr. Holder derived income from the pattern of criminal conduct in any twelve month period that "exceeded 2000 times the then existing hourly minimum wage under federal law," or that he did not have other employment in any other twelve month period that would have made the distribution of controlled substances Mr. Holder's primary occupation.

At trial Glen Brickey testified that Mr. Holder worked with Bill Martin buying used cars and fixed and resold those vehicles. He said that Mr. Holder did that work in 2017 and 2018. Tr. 4/12/21 at 1234:8-25; 1235:1-25. He testified that Mr. Holder worked on

oil fields in North Dakota.  Tr. 4/12/21 at 1234: 5-6, and that he worked with Mr. Holder on an oil rig in Parachute for about two years from 2008-2010.  *Id.* at 1217:8-15; 1236:1-4.  Ms. Holder also testified that Mr. Holder worked on cars and that Mr. Holder made income from that work.  She said that he worked at the Bump Shop Auto on 28th Road in Grand Junction and at Rand R Auto.  Tr. 4/12/21 at 851: 23-25; 852:1-5.  Ms. Holder also agreed that Mr. Holder worked on an oil rig.  *Id.* at 852:7-8.

Ms. Holder  previously told law enforcement that Mr. Holder made most of his income from "definitely cars."  *Id.* at 852:9-13.  She made this statement before she was a cooperator and when confronted with that prior statement about "definitely cars," which contradicted her trial testimony, Ms. Holder admitted that her cooperation required her to make the government happy and that there was nothing illegitimate about the income Mr. Holder made by fixing and reselling cars.  *Id.* at 852: 9-13, 24-25; 853:1-24.  Notwithstanding Ms. Holder's inconsistent characterization about the source of Mr. Holder's income, there was no evidence to establish that Ms. Holder had any actual first-hand knowledge about Mr. Holder's finances.  Ms. Holder did not live with Mr. Holder.  She did not handle Mr. Holder's finances and had no reason to know anything about his finances.

**Paragraph 81**: Mr. Holder objects that the evidence established that he was an organizer or leader under §3B1.1(a) because the evidence at trial showed that the only people directly linked to Mr. Holder, and who directly received pills from Mr. Holder, was less than five people: Ms. Matos, Mr. Huggett, Ms. Holder and Mr. Tyreece Holder.  The PSI references Ms. Corina Holder.  Ms. Holder had passed away before the trial, did not testify at trial and there was insufficient evidence regarding Ms. Holder at trial to establish

her connection with Mr. Holder related to the charges in this case. The "other individuals" referred to the PSI were all people that were independent customers of Mr. Huggett, Z.G., Ms. Holder or others. For example, JE was a customer of Mr. Huggett and others. Both Mr. Huggett and Ms. Holder admitted during their testimony that they recruited and had their own customers who Mr. Holder had no knowledge of or connection with. Mr. Huggett and Ms. Holder admitted that they had their own independent businesses and Z.G. admitted that he was the one responsible for selling to JE. Tr. 4/9/21 at 502:5-20; 516: 15-19.

**Paragraph 82**: As stated above, this enhancement related to the involvement of a person less than 18 years of age should not apply if the Court applies § 2D1.1(b)(16)(B)(1) under Paragraph 75 because the application of both would constitute improper double counting and Mr. Holder's punishment would be increased based on the same conduct.

**Paragraph 83:** Mr. Holder raises the same objection here. If the Court either applies the enhancement in Paragraph 75 and/or § 2D1.1(b)(16)(D), Mr. Holder asserts it would constitute improper double counting to also apply this two point obstruction enhancement under §3C1.1.

Further, based on the facts of this case, the Obstruction of Evidence enhancement pursuant to section §3C1.1 also does not apply because there is insufficient evidence. The purported obstruction is in part based upon allegations that Mr. Holder instructed Ms. Matos to destroy evidence on her phone. Curiously, the government put forth no evidence that Ms. Matos actually destroyed any evidence on her phone or iPad, and indeed the government introduced all sorts of evidence and emails between Mr. Holder and Ms. Matos, Ms. Matos and Chon and Mr. Holder and others that appeared to be taken from

her devices.  Furthermore, Mr. Holder was aware that Ms. Matos's devices contained graphic and salacious images that would have proven embarrassing to her and Ms. Matos admitted that the content of the iPad contained personal and embarrassing content.  Tr. 4/8/21 at 382:20-25; 383:1-15.

The PSI also notes that Mr. Holder supported efforts of Mr. Huggett to have Z.G. murdered, but in paragraph 75 the PSI discounted the evidence in support of applying the use of violence enhancement.  At trial, Mr. Huggett testified that because Z.G. was a witness against him, he was talking to others about paying a guy $5,000 and giving him a silver BMW in order to knock off Z.G.  Tr. 4/9/21 at 533: 24-25; 534:1-5.  He testified that he, not Mr. Holder, was trying to create a jailhouse persona.  *Id.* at 534:6-15.  He testified that he had already talked to the feds, and accepted responsibility, and it would have been counterproductive for him to try to kill a witness.  *Id.*  He testified that Bruce Holder had nothing to do with it.  *Id.* at 536:20-21.

The only testimony at trial that potentially supports this enhancement that of Ms. Matos who, in response to being asked whether anyone forced her to sell drugs, indicated that there was an implied threat.  Tr. 4/9/21 at 416:24-25; 417:1-7.  She does not say what the implied threat was, who made the implied threat or when or where the implied threat occurred. Ms. Matos also testified, following a question and answer about how tall Mr. Holder is, that "he does intimidate me."  Tr. 4/8/21 at 421:24-25; 422:1-2.  There was no testimony that Mr. Holder intimidated Ms. Matos in the context of selling drugs.

Lastly, Mr. Holder objects to this enhancement being applied because of a couple of phone calls he made.  There is absolutely no evidence to support the conclusion that these calls were made to obstruct justice.

7

### B. The Advisory Guideline Range

With all adjustment and enhancements, the PSI provides for an adjusted base offense level of 58. ECF No. 646 at ¶ 84. The PSI then recommends a life sentence based on an offense level of 43 and a criminal history category II. *Id.* at ¶ 138; ECF No. 646-1. Mr. Holder objects to this base offense level and the ultimate sentencing recommendation in the PSI.

### C. The Application of Relevant Conduct

Mr. Holder objects to consideration of all of the following evidence as relevant conduct under USSG §1B1.3. Although the Court has wide latitude to consider various information at sentencing pursuant to 18 U.S.C § 3661, there is still a standard of proof and there must be a sufficient indicia of reliability to support the probable accuracy of relevant conduct and other information that was not proven beyond a reasonable doubt at trial. *See* USSG § 6A1.3, p.s. *See also United States v. Watts,* 519 U.S. 148, 157 (1997). The same standard applies to hearsay statements that the government attempts to rely on as relevant conduct. Although the Court can consider hearsay statements, these statements must bear some indicia of reliability. *United States v. Damato,* 672 F.3d 832 (10th Cir. 2012). Here, the alleged relevant conduct is based on hearsay, unreliable witnesses who are cooperators and have their additional motives and biases to fabricate information and the evidence is not sufficiently reliable. The alleged relevant conduct is also based on speculation, particularly about the meaning of text message communications, and other weak circumstantial evidence.

1. **Other Controlled Substances**

The PSI adopts and references the government's sentencing statements about the alleged other controlled substances. ECF No. 646 at ¶¶ 26-30. Mr. Holder respectfully objects to the Court considering those facts when determining his sentence because there was no evidence presented at trial to establish those facts and there is insufficient evidence presented in the PSI and in the government's Sentencing Statement. ECF No. 609 at 7-8. The PSI just repeats the uncorroborated facts that are contained in the Sentencing Statement. ECF No. 646 at ¶¶ 26-30. The Sentencing Statement provides generalized information about its allegations regarding alleged "other controlled substances" and omits critical facts in this analysis.

First, the government refers to facts related to Ms. Corina Holder, who did not testify at trial, who the defense did not have the ability to cross-examine, and who made various inconsistent statements during her interviews with the federal authorities. Indeed, Ms. Holder's statements were inadmissible testimonial hearsay at trial under *Crawford v. Washington,* 541 U.S. 36 (2004) and the defense has never been able to interview her or cross-examine her.

Second, according to discovery, most of the uncorroborated statements Ms. Matos provided about alleged methamphetamine transactions that allegedly occurred date as far back as 2013. Further, in reports, she claims that by 2016 the focus was on pills and not methamphetamine. Therefore, if any weight is to be given to these uncorroborated hearsay statements, the statements show that that activity pre-dated the dates of the conspiracy at issue in this case and the conduct related to the conspiracy involved pills, not methamphetamine.

Third, the PSI and government omit the fact that no methamphetamine was ever recovered on Mr. Holder's person, or in his home or car. Mr. Holder was never observed with any methamphetamine despite the fact that law enforcement conducted surveillance on him for a long time. Any substance suspected to contain methamphetamine was recovered in connection with Ms. Matos, well after Mr. Holder had been taken into custody in this case. Further, there are no evidence of jail calls to support that idea that Mr. Holder was directing Ms. Matos' transaction. There never has been evidence in this case that Mr. Holder was directing any sort of drug distribution from inside the jail. Ms. Matos was caught with her own pills months after Mr. Holder had been arrested, and well over a year after Mr. Holder had been in custody law enforcement discovered approximately 52.8 grams of methamphetamine connected to Ms. Matos – and not Mr. Holder.

The PSI adopts facts from the Sentencing Statement where government claims that some sort of heroin distribution occurred. ECF Nos. 646 at ¶ 29; 609 at 7-8. The government speculates based on text messages, with no other confirmation, that there "appeared to be an agreement" to distribute heroin. *Id.* at 8. The PSI adopts this speculation with any proof that the government's slanted interpretation about an alleged "conspiracy" involving the distribution of heroin is true. Embracing the government's speculation about text messages is not sufficient proof that Mr. Holder was involved with the possession or distribution of heroin.

The same is true for any allegations related to marijuana. Any statement the government or the PSI attributes to Ms. Corina Holder must be put in context since she struggled with many mental health, substance abuse and memory issues and, as evidenced by her many statements to law enforcement, was a completely unreliable

10

witness. At best, discovery indicates that Ms. Matos made some dated, vague statement in her interviews with the authorities about Mr. Holder and marijuana that pre-existed the dates of offense in this case.

Mr. Holder objects to the Court's consideration of all of this conduct because it is uncorroborated evidence based on hearsay evidence from witnesses with their own agendas and that evidence, on its own, is not sufficient to be relevant conduct for purposes of sentencing.

### 2. Receipt And Possession of Firearms

The PSI adopts and references the government's sentencing statements about the alleged other controlled substances. ECF No. 646 at ¶ 32. Mr. Holder respectfully objects to the Court considering those facts when determining his sentence because there was no evidence presented at trial to establish his receipt and/or possession of a firearm. Further, there is insufficient evidence presented in the PSI and in the government's Sentencing Statement. ECF No. 609 at 8-9. Ms. Brickey did not testify about Mr. Holder using, possessing or owning guns at trial, as the government and the PSI suggest. Ms. Brickey's extra-judicial statements on this topic should be given no weight since she had her own motivation to say whatever the government wanted her to say when interviewed. The same is true for Ms. Matos and her uncorroborated belief about Mr. Holder and firearms.

The reality is that despite being subjected to constant surveillance and scrutiny for a very long time, Mr. Holder has never been observed as someone who carries a gun. When the federal authorities raided Mr. Holder's home, no firearms were recovered. When he was arrested, no one found a firearm on his person or in his car. Mr. Holder is

not a gang member. None of the witnesses at trial, including his own family members, described him in their interviews as someone that carried a gun – much less who used a gun in furtherance of any drug trafficking efforts. Mr. Holder respectfully asserts that there is insufficient evidence for the Court to consider these unfounded allegations as relevant conduct for purposes of sentencing.

### 3. Additional Overdoses

The PSI includes numerous other overdose deaths, again by just adopting references in the government's Sentencing Statement which should not be considered as relevant conduct under USSG §1B1.3. Mr. Holder did not personally know these people, with perhaps an exception where Mr. Holder knew of someone. He was not friends with these people and did not spend time with them. Generally, there are no allegations that he directly distributed to most, if any, of these people. Instead, the evidence shows that others distributed to those individuals.

Further, the government could not prove that fentanyl was the but for cause of death for any of these individuals because these individuals had other controlled substances in their systems upon death. For example, some of these individuals had oxycodone, cocaine, MDMA, and other drugs in their blood and/or urine. Therefore, although fentanyl may have contributed to these deaths it was not the ultimate cause of these deaths as established by toxicology results and medical evidence.

Finally, the allegations in this context are based on circumstantial inferences and hearsay statements from people like Ms. Matos who, as discussed above, was a cooperator and had her own motivations to paint Mr. Holder in the most negative light possible. These allegations include other evidence rooted in hearsay, such as the content

of selective text messages. Again, the PSI even references statements of Ms. Corina Holder and those statements constitute completely unreliable testimonial hearsay as discussed above.

### 4. Attempted Contact With Witnesses

Mr. Holder objects to the reference to alleged attempted contact with witnesses as constituting relevant conduct because there is insufficient evidence. ECF No. 646 at ¶¶ 31-32. The allegation that Mr. Holder tried to call Ms. Matos's son, who Mr. Holder was very close to for years, and then did not actually speak with him, does not constitute relevant conduct. Neither does the allegation from Ms. Matos' friend who speculates as to Mr. Holder's mental state or intent when he briefly spoke with her. Mr. Holder objects to the Court's consideration of one phone call and an attempted phone call as relevant conduct that would impact the sentence he will receive in this case.

### D.   Acquitted Conduct

Although this Court may consider acquitted conduct, *see United States v. Magallanez,* 408 F.3d 672 (10th Cir. 2005), the Court is not required to do so. In this case, the request for this Court to consider evidence related to Count Two is unreasonable when the jury did not find beyond a reasonable doubt at trial that Z.G. suffered from serious bodily injury and Mr. Holder is facing up to a life sentence for the counts he was convicted for. Both the PSI and the government are recommending a life sentence and therefore the consideration of acquitted conduct is overly putative and unnecessary. The evidence was clear at trial that there was no fentanyl found in Z.G.'s urine, that he awoke right after being administered Narcan, was at the hospital for a short amount of time and was discharged with no signs of an opioid overdose. To the contrary,

the medical records established that Z.G. was discharged with symptoms of dehydration and a possible potassium deficiency.  Tr. 4/14/21 at 1372: 1-15; Exs. 26, 27.  To consider this acquitted conduct under the circumstances in this case would be unreasonable, particularly considering the statutory and guideline punishment Mr. Holder is already facing without consideration of this evidence.

WHEREFORE, Mr. Holder respectfully submits the aforementioned corrections and objections to the Presentence Investigation Report.

Respectfully submitted,

*s/Kristen M. Frost33661*
Patrick L. Ridley
Kristen M. Frost
Ridley, McGreevy & Winocur,
P.C.303 16th Street, Suite 200
Denver, Colorado  80202
Telephone: (303) 629-9700
Fax:  (303) 629-9702
Email ridley@ridleylaw.com
          frost@ridleylaw.com

14

## CERTIFICATE OF SERVICE

      I hereby certify that on this 26th day of July, 2022, I served a true and correct copy of the foregoing **DEFENDANT BRUCE HOLDER'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT** electronically with the clerk of the court via the CM/ECF system to all interested parties:

Jeremy Chaffin
Assistant United States Attorney
United States Attorney's Office
205 North 4th Street, Suite 400
Grand Junction, CO 81501
Tel: (970) 257-7113
Fax: (970) 248-3630
E-mail Jeremy.chaffin@usdoj.gov
Attorney for the Government

                                                        *s/Kristin McKinley*
                                                        Kristin McKinley, Legal Assistant
                                                        Ridley McGreevy & Winocur
                                                        303 16th Street Suite 200
                                                        Denver CO 80202
                                                        Telephone: (303) 629-9700
                                                        Facsimile: (303) 629-9702
                                                        Email: mckinley@ridleylaw.com