**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 18-cr-00381-CMA-GPG

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. BRUCE HOLDER,

      Defendant.

---

**UNITED STATES' RESPONSE TO DEFENDANT BRUCE HOLDER'S OBJECTIONS
TO THE PRESENTENCE INVESTIGATION REPORT (Doc. 691)**

---

The United States of America, by and through Cole Finegan, United States
Attorney for the District of Colorado, J.D. Rowell, Assistant United States Attorney, and
Jaime Pena, Special Assistant United States Attorney, hereby responds to *Defendant
Bruce Holder's Objections to the Presentence Investigation Report* (Doc. 691)
("Objection") filed July 26, 2022, objecting to provisions of the original *Presentence
Investigation Report* filed September 7, 2021. (Doc. 646). The United States Probation
Office thereafter filed a revised *Presentence Investigation Report* on December 30,
2022. (Doc. 709). The Government re-asserts and adopts the facts and positions in the
*Government's Sentencing Statement* (Doc. 609) and respectfully responds to each
corresponding objection delineated by the Defendant, as follows:

**RESPONSE TO OBJECTION ON PARAPRAPH 74**

The +2 level adjustment for possession of a firearm is supported by the testimony
from Special Agent Doheny that Marie Matos stated that Mr. Holder had firearms he

smuggled into Mexico as gifts and bribes. Likewise, Ms. Brickey testified about exchanging firearms with Mr. Holder for drug debts. This testimony is corroborated by the text messages admitted at trial. The coded text messages between Ms. Brickey and Mr. Holder referencing "slingshots" were references to firearms. Their testimony, corroborated by the text messages, is compelling. This objection should be overruled.

**RESPONSE TO OBJECTION ON PARAPRAPH 76**

It was uncontroverted that the defendant was involved in a continuing enterprise and conspiracy to import and distribute controlled substances from Mexico. Special Agent Doheny testified that Ms. Matos provided evidence Mr. Holder was importing methamphetamine along with the counterfeit fentanyl-laced pills. In fact, a search of the hidden compartment described by Ms. Matos revealed a considerable amount of "ice" methamphetamine, consistent with her report to Special Agent Doheny. The +2 level increase is warranted by the evidence. This objection should be overruled.

**RESPONSE TO OBJECTION ON PARAPRAPH 79**

The +2 level increase is supported by the evidence. In support of the adjustment, the Defendant was directly involved in the distribution of the illicit pills. At the motions hearing, Special Agent Doheny testified Marie Matos stated she and Holder smuggled both Methamphetamine and Counterfeit fentanyl pills in a concealed compartment of a vehicle. Special Agent Doheny testified about returning to the vehicle, finding the concealed compartment, and recovering a significant amount of "ice" methamphetamine in the concealed compartment. In the trial evidence, the text messages between Holder and Chon involved "cones" and "blues", references to methamphetamine and the blue fentanyl laced pills. Marie Matos and Tyrese Holder testified about the stash Holder kept

in his house and how Holder directly supplied some customers at the house. Marie Matos, Tyrese Holder and Lexus Holder all testified about how Holder directly received the pills in Mexico, travelled to the border, departed the vehicle, walked across the port of entry, and was picked up by his driver in the United States prior to driving back to the Grand Junction area. Defendant also obstructed justice when he directed Marie Matos to destroy the evidence on his cellphone realizing there was incriminating evidence and photos should it fall into the hands of law enforcement.

There is no question that fentanyl and methamphetamine distribution was Holder's primary source of income. Marie Matos testified Mr. Holder's primary, if not exclusive, source of income was the sale of controlled substances. It was his livelihood.

Additionally, Tyrese Holder, the defendant's 17-year-old son at the time, was recruited and used by Defendant to distribute controlled substances to students at the high school he attended. The defendant directly involved his minor son in his criminal enterprise. This objection should be overruled.

**RESPONSE TO OBJECTION ON PARAPRAPH 81**

Contrary to the characterizations in Defendant's objection, there was ample evidence adduced at trial from which the trier of fact could conclude Defendant was the organizer or leader of criminal activity involving five or more participants or was otherwise extensive. Testimony at trial was uncontroverted that the Defendant was "the boss" of everyone named in the indictment. He held economic control over the other participants by being the sole source of supply of the counterfeit fentanyl-laced pills. The +4 role adjustment is supported by the evidence at trial. This objection should be overruled.

**RESPONSE TO OBJECTION ON PARAPRAPH 82**

This +2 adjustment for the use of a minor in the commission of the offense is warranted and does not constitute "double counting" because the prior adjustment is supported by facts other than the use of a minor. It is uncontroverted the Defendant used his minor son to distribute drugs in his home and at his high school. Tyrese Holder testified that on at least one occasion, he stayed home to "mind the store" when Defendant and his family were at the beach house in Punto Penasco, Mexico, getting more drugs. This objection should be overruled.

**RESPONSE TO OBJECTION ON PARAPRAPH 83**

The +2 adjustment for Obstruction of Justice is supported by the evidence and does not constitute "double counting" because it is supported by facts independent of the prior adjustment, which was based on the destruction of evidence on the cellphone after Defendant's arrest. The adjustment is supported by the Defendant's efforts to sway Ms. Matos from testifying against him by contacting people connected to her. Also, the testimony demonstrated his approval of violent conduct by a co-conspirator soliciting the murder of a potential witness, Mr. Green. These additional acts of obstruction of justice support the adjustment.  Additionally, Mr. Holder's intimidating conduct during trial supports this adjustment. Contrary to defense assertion Ms. Matos was not intimidated by Mr. Holder, the trial testimony was she was indeed afraid of him. See *United States v. Stegman*, 873 F.3d 1215, 1240 (obstruction enhancement applied where defendant destroys evidence, alters evidence, and tampers with witnesses). This objection should be overruled.

## **THE APPLICATION OF RELEVANT CONDUCT**

The advisory Sentencing Guidelines and 18 U.S.C. 3661 are clear that the

sentencing court has wide latitude in considering information relevant to sentencing:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive evidence and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. 3661

In this case, the sentencing judge may consider the reliable evidence and

information adduced at trial as well as evidence and information adduced in the

associated evidentiary hearings, including without limitation, the Rule 702 *Daubert*

hearing, the *James* hearing, the suppression hearing(s), and the *limine* hearing(s). The

court may also consider the court filings, reports, search warrant affidavits, victim impact

statements and other documentation it deems reliable in determining an appropriate

sentence.

### *Other Controlled Substances and Possession of Firearms*

It is uncontroverted Mr. Holder, in addition to importing the fentanyl pills, was

importing methamphetamine in large quantities. The admissibility of that fact was

litigated pretrial, and the government was permitted by court order to put on such

evidence at the trial if it so chose.  The court is in the best position to determine the

credibility of the witnesses who testified about those instances at the pretrial hearings

and the reliability of supporting documentation, including without limitation, the

circumstances of the fentanyl and methamphetamine importation reported by Marie

Matos to Special Agent Doheny, who testified at the pretrial hearings.  Similarly, the

court heard evidence regarding the exchange of firearms for pills from the Brickeys.

*The Additional Overdoses*

The court is also free to consider the additional overdose deaths involving the powerful counterfeit fentanyl-laced pills in light of the testimony from experts, including the defense pathologist, about the deadly consequences of fentanyl ingestion, even when combined with other drugs. Ms. Matos testified about how the defendant knew the pills contained deadly fentanyl before young people began to overdose on the pills on the Western Slope. The testimony of Lexus Holder and Marie Matos was identical that the defendant was the only source of the counterfeit fentanyl-laced blue pills in the Grand Junction area at the time. There was also extensive evidence and reports submitted to the court at the 702 *Daubert* hearing as well as the victim impact statements which the court may consider. All the fentanyl related overdoses are relevant to setting a reasonable sentence by the court.

*The Attempted Contact with Witnesses*

The court can consider obstructive conduct by the Defendant as relevant conduct. The reports, affidavits and evidence point to instances of obstructive conduct involving Mr. Holder's attempts to dissuade Ms. Matos from testifying against him. This conduct is consistent with his attempts to have Ms. Matos destroy evidence and his conduct in court. See *United States v. Stegman*, 873 F.3d 1215, 1240 (obstruction enhancement applied where defendant destroys evidence, alters evidence and tampers with witnesses).

*Acquitted Conduct*

Finally, the Court is free to consider acquitted conduct. Defendant mischaracterizes the evidence when he states, "The evidence was clear at trial that

there was no fentanyl in Z.G.'s urine…". The testimony was that no fentanyl test was ever run because the medical history was that ZG was under the influence of Oxycodone, and as a result, the only test run was for Oxycodone, not fentanyl. The testimony from the defense pathologist was that a specific request for a fentanyl panel would have been required to test for fentanyl. The fact the tests for fentanyl were never run adds credence to Z.G.'s testimony he did not know the pills contained fentanyl and were merely Oxycodone. The Narcan would have revived Z.G. for a fentanyl overdose as well as an Oxycodone overdose. The "dehydration defense" in light of the faulty medical history provided to the attending physician is merely a red herring that detracts from the testimony and reasonable inferences in this case. The court may consider acquitted conduct if it is established by a preponderance of the evidence and the final sentence is within the applicable statutory range. See *United States v. Watts*, 519 U.S. 148, 149 (1997).

## CONCLUSION

For the reasons stated above, Holder's Objections should be overruled, and he should be sentenced to the reasonably appropriate sentence of "life" after the court

//


//


//

applies the enumerated factors in 18 U.S.C. 3553, and if appropriate, considers an

upward variance.

DATED this 6th day of January 2023.

COLE FINEGAN
United States Attorney

*s/J.D. Rowell*
J.D. Rowell
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Telecopier: (303) 454-0403
E-mail: JDRowell@usdoj.gov

*s/Jaime Pena*
Jaime Pena
Special Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Telecopier: (303) 454-0403
E-mail: Jaime.A.Pena@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

*s/Jaime Pena*